**Alessi License**

*Reilly & Pearce*, for applicant.

*Edmund P. Hannum*, for Pennsylvania Liquor Control Board.

PER CURIAM, November 7, 1952.—This is an appeal from the refusal of the Pennsylvania Liquor Control Board to grant a new restaurant liquor license to Frank J. Alessi for premises 2335 Marshall Road, Upper Darby, Pa.

Testimony was taken before Sweney, J., on July 23, 1952, and argued before the full court en banc on September 23, 1952.

The reasons given by the board for the refusal of the license were:

1. The applicant is engaged in other activities which occupy his full time, and he will not be in a position to give personal supervision to the operation of the establishment, as required by the regulations of the board.

2. The establishment proposed to be licensed under this application is not in operation as a bona fide restaurant, as defined in the Liquor Code.

3. Many residents of the community are opposed to the issuance of a retail liquor license at this location for the reason that the establishment is located in a residential area, wherein there are already sufficient licenses to accommodate the needs of persons residing in the immediate vicinity, as well as any other persons

who may have occasion to come into this portion of the township.

At the hearing before the court an additional objection was raised, to wit, that the proposed establishment is located within 300 feet of a small playground for little children classified as a "Tot Lot."

The evidence established that the applicant is a responsible person of good repute who is qualified to hold a license and that the premises meet the physical requirements established by the regulations of the board, under authority of the Liquor Code. They are located in a small, local commercial area surrounded by a residential area on Marshall Road, which divides Upper Darby Township from Lansdowne Borough.

The Liquor Code makes no provision respecting the employment of a licensee. However, it does grant the Pennsylvania Liquor Control Board the authority to make proper regulations not inconsistent with the code. Section 109.5 of the Regulations of the Pennsylvania Liquor Control Board provides:

"Employment of Licensees

"A license to manufacture, transport or sell liquor, alcohol and malt or brewed beverages, is a personal privilege which must be exercised by the individual to whom the license is issued. The operation of a licensed business is a full time responsibility requiring the constant attention of the licensee.

"A. Retail Licensees

"No individual holding a retail license in his own name is permitted to be employed at, or engaged in any other business, except such associated business as is permitted under Section 103.02 of these regulations. If the license is issued in the name of a partnership, it is permissible for the partners, except one, to have outside employment."

The evidence before the board was that Frank J. Alessi was engaged in building houses and was an

officer and director of a corporation, Alessi Brothers Company, which is in the monument business. At the hearing before the court the applicant testified that he had given up all his outside interests and would devote his full time to the management of this restaurant. However, the testimony also revealed that he still retained his position as secretary of Alessi Brothers Company which at least required his attention for the signing of papers or checks and attending meetings of the board of directors. It may well be that the duties of secretary are more extensive than his testimony would admit. In any event, he testified positively that he only devoted "approximately four or five hours per day" to the restaurant business. We feel that the regulation of the board requiring full time attention to the business is a proper one and we do not feel that the applicant has established that he will devote his full time to the management of the restaurant.

The testimony revealed that the applicant commenced business on these premises as a restaurant in September 1950; that his gross sales approximated $170 a week; that food was sold according to a menu and that equipment, consisting of knives, forks, spoons, cups, saucers, dishes and kitchen equipment, required an outlay of $2,500. Witness Rose Qualeta testified that she had been employed since October 1950 and served between 350 and 500 customers a week; that sandwiches, seafood and hot platters were prepared; that the business was conducted six days a week, opening in the morning for breakfast and remaining open until 1:00 o'clock the following morning. Many witnesses testified before the board and additional witnesses testified before the court that they had on many occasions purchased meals in the restaurant and that other cutomers were present when they were there. We, therefore, believe that the evidence establishes that

the business was a bona fide restaurant within the meaning of the Liquor Code.

The third reason given by the board for refusing the license was that many residents of the community objected thereto and that there already are sufficient licenses in the immediate vicinity. We do not feel that this is a legitimate reason for refusing a license. We feel that under section 404 of the Liquor Code the issuance of a license to a restaurant is mandatory when the applicant is a person of good repute, and the premises applied for meet all the requirements of the act and the regulations of the board and are not within 300 feet of certain named institutions. The fact that there are other licensees in the immediate vicinity appears to be immaterial. The Liquor Code sets up a quota for each political subdivision but there is no further breakdown and apparently all of the quota licenses could be in a small portion of the municipality. We feel that if this requires a change in the law, that change can only come from the legislature.

Although there was some testimony before the board about the existence of a "Tot Lot" within 300 feet of the premises in question, the investigator had previously testified: "It is not located within 300 feet of any restrictive institution", and the board apparently adopted his testimony and failed to make any discussion of the playground in its opinion. However, the hearing before the court is de novo and there was additional testimony, including photographs, which clearly showed that there was a playground within 300 feet of the premises. It is true that the Liquor Code does not absolutely prohibit a license within that distance but leaves it to the discretion of the board whether or not to grant an application under such circumstances. However, it is also true that section 464 of the code provides that upon appeal to the court it "shall hear the application de novo on questions of

fact, administrative discretion and such other matters as are involved." We feel, therefore, that the administrative discretion granted to the board with respect to restrictive institutions is also granted to the court upon appeal and we therefore exercise such discretion and refuse to order the issuance of the license.

We have been informed that as a result of the 1950 census the quota for licenses in Upper Darby Township is now 85 and that up to the present time only 83 have been granted by the board. By orders filed yesterday in two appeals we have directed the board to issue two additional licenses so that the quota for Upper Darby Township is now full. It follows that even if we were to agree with the contentions of appellant it would be impossible to grant him a license because there is none available in Upper Darby at the present time.

From the evidence taken before the board, supplemented by the evidence taken before the court, we make the following

### Findings of Fact

1. The applicant is engaged in other activities and will not be in a position to give his full time, personal supervision to the operation of the restaurant, as required by the regulations of the Pennsylvania Liquor Control Board.

2. The establishment proposed to be licensed under this application is a bona fide restaurant, as defined by the Liquor Code.

3. The fact that many residents of the community are opposed to the issuance of a restaurant liquor license and the fact that there are already other licensees within the immediate vicinity is not in itself sufficient ground for refusal of a license.

4. The place proposed to be licensed is within 300 feet of a public playground.

5. The issuance of a license to the applicant would cause the quota of licenses for Upper Darby Township to be exceeded.

### Order

And now, to wit, October 7, 1952, it is ordered and decreed that the appeal in the above-entitled case be and it is hereby dismissed.